**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PEIJIAO FANG,<br><br>Plaintiff,<br><br>v.<br><br>MARCO A. RUBIO<br>in his official capacity as Secretary of the<br>U.S. Department of State, et al.,<br><br>Defendants. | ) | Civil Action No. 25-3509 (RBW) |

**MEMORANDUM OPINION**

The plaintiff, Peijiao Fang, proceeding pro se, brings this civil action against the defendants—Marco Rubio, in his official capacity as the Secretary of the United States Department of State; the Department of State itself; the Consular Officer of the United States Consulate General in Shanghai, China; Markwayne Mullin,[1] in his official capacity as Secretary of the Department of Homeland Security; and the Department of Homeland Security itself. See generally Complaint for Writ of Mandamus ("Compl."), ECF No. 1. The plaintiff alleges that the defendants have unreasonably delayed adjudicating her visa application and seeks an order from this Court compelling the defendants to promptly adjudicate her visa application. Id. at 38. Currently pending before the Court is the defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See Motion to Dismiss and Memorandum in Support Thereof ("Defs.' Mot.") at 1, 3, ECF No. 33. Upon careful consideration of the parties'

[1] Markwayne Mullin, the current Secretary of the Homeland Security, is automatically substituted for his predecessor, Kristi Noem, pursuant to Federal Rule of Civil Procedure 25(d).

submissions,[2] the Court concludes for the following reasons that it must grant the defendants' motion.

## I. BACKGROUND

### A. Statutory Background

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, foreign workers engaged in specialty occupations may temporarily work for employers in the United States on a nonimmigrant visa called an H-1B visa. See 8 U.S.C. § 1101(a)(15)(H)(i)(b). A specialty occupation requires both "theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor" and the "attainment of a bachelor's degree or higher in a specific specialty, or its equivalent[.]" 8 C.F.R. § 214.2(h)(4)(ii).

The H-1B visa process consists of three steps: first, an employer must request "a certification from the Department of Labor that it has filed a labor condition application in the occupational specialty in which the alien[] will be employed." Sinha v. Blinken, No. 20-cv-2814 (DLF), 2021 WL 4476749, at *1 (D.D.C. Sept. 30, 2021) (alteration in original) (quoting 8 C.F.R. § 214.2(h)(4)(i)(B)(1)). Next, the employer must file an I-129 petition with the United States Citizenship and Immigration Services ("USCIS") "for review of the services or training and for determination of the alien's eligibility for classification as a temporary employee or trainee." Id. (quoting 8 C.F.R. § 214.2(h)(1)(i)). Lastly, the petitioner must complete "the actual visa application through the Department of State by applying at his local embassy or consulate," which "typically includes an in-person interview that results in a grant or denial of the visa application." Id.; see also 8 C.F.R. § 214.2(h)(2).

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 34; and (2) the Defendants' Reply in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 35.

After the applicant has applied at his local embassy or consulate, a consular officer "must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a). The consular officer may refuse to issue a visa under Section 221(g) of the INA, which provides that

> [n]o visa or other documentation shall be issued to an alien if (1) it appears to the consular officer . . . that such alien is ineligible to receive a visa or such other documentation . . . , (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation[.]

8 U.S.C. § 1201(g). The consular officer "cannot temporarily refuse, suspend, or hold the visa for future action" after the interview, Datta v. Rubio, No. 24-cv-2937 (PLF), 2025 WL 752643, at *1 (D.D.C. Mar. 10, 2025) (quoting Vol. 9, Foreign Affairs Manual ("FAM") §§ 504.1-3(g), 504.9-2), but must complete the determination "properly and promptly . . . in accordance with the applicable regulations and instructions[,]" id. (quoting 22 C.F.R. § 41.106). The consular officer may, however, "refuse" the visa pending further administrative processing pursuant to Section 221(g) of the INA if he or she determines that "additional information from sources other than the applicant may help establish an applicant's eligibility for a visa." Id. (internal citations omitted).

## B. Factual Background

The following allegations are derived from the plaintiff's Complaint, unless otherwise specified. The plaintiff is "a citizen of China and is the beneficiary of an approved H-1B petition." Compl. ¶ 6. The plaintiff's H-1B visa petition was approved by the United States Citizenship and Immigration Services ("USCIS") on June 2, 2023, id. ¶ 12, and, on December 10, 2024, the plaintiff attended a visa interview at the U.S. Embassy in Shanghai, China, id. ¶ 13; see also id. ¶ 9. The plaintiff alleges that "[a]t the conclusion of the interview, the [visa] application was placed under administrative processing." Id. When the plaintiff filed her

Complaint in this case, "[m]ore than six months ha[d] passed since the interview, and no substantive update or final decision ha[d] been provided to [the p]laintiff." Id. ¶ 14. The plaintiff "has contacted the U.S. Consulate in Shanghai, as well as sought assistance from the offices of a U.S. Senator and U.S. Congressman[,]" but "[d]espite these efforts, [the p]laintiff has received no meaningful update or resolution regarding the prolonged delay." Id. ¶ 15. The plaintiff alleges that "[t]he delay has caused [her] severe emotional and physical hardship" and that she "has experienced ongoing stress and anxiety, including many sleepless nights, due to the uncertainty surrounding her visa status and future employment." Id. ¶ 3.

### C. Procedural Background

The plaintiff originally filed her complaint on June 18, 2025 in the Northern District of California. See id. at 1. On August 23, 2025, the defendants moved to dismiss the complaint or, alternatively, to transfer this case to the District of Columbia. See Defendants' Notice of Motion and Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue at 1, ECF No. 8. On September 30, 2025, Magistrate Judge Thomas S. Hixson granted the defendants' request to transfer venue and ordered that the case be transferred to this District. See generally Order (Sept. 29, 2025), ECF No. 20. On March 25, 2026, the defendants filed their motion to dismiss. See generally Defs.' Mot. The plaintiff filed her opposition to the motion to dismiss on April 8, 2026, see generally Pl's. Opp'n, and the defendants filed their reply to the opposition on April 15, 2026, see generally Defs.' Reply.

## II. STANDARDS OF REVIEW

### A. Motions to Dismiss Under Rule 12(b)(1)

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under

[Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject-matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 326 (D.D.C. 2002) (Walton, J.) (citations omitted).

In deciding a motion to dismiss based on lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001) (citation omitted). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted). And, the Court "need not accept bare legal conclusions nor unsupported inferences." Campaign Legal Ctr. v. Fed. Election

Comm'n, No. 22-cv-3319 (CRC), 2024 WL 4263853, at *5 (D.D.C. Sept. 23, 2024) (citing Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).

**B. Motions to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the

complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

The plaintiff seeks a writ of mandamus or an order compelling agency action under the Administrative Procedure Act ("APA") based on unreasonable delay. Compl. ¶¶ 17–19.[3] The defendants argue that: (1) there is no discrete agency action that a consular officer is required to take on the plaintiff's visa application, Defs.' Mot. at 4–8; (2) the plaintiff's claims are barred by the consular nonreviewability doctrine, id. at 9–12; and (3) even if the Court reaches the merits, the plaintiff is not entitled to relief because any delay in adjudicating his visa application is not unreasonable, id. at 12–18.[4] The Court will address each argument in turn.[5]

### A. Whether There Is a Non-discretionary Duty to Act on the Plaintiff's Visa Application

Before the Court can consider the merits of the plaintiff's mandamus claim, the plaintiff "must first establish that the agency [whose action she seeks to compel] has violated a crystal-clear legal duty" and that she has "no other adequate means to attain the relief [she] desire[s]."

---

[3] The pro se plaintiff does not specifically reference 28 U.S.C. § 1361, which grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff[,]" but it appears to the Court that the plaintiff is seeking relief pursuant to both that statute and the Administrative Procedures Act, 5 U.S.C. § 555(b). See Compl. ¶¶ 17–19.

[4] The defendants characterize their second and third arguments regarding the consular nonreviewability doctrine and the merits of the plaintiff's unreasonable delay claim as warranting dismissal under Rule 12(b)(6). See Def.'s Mot. at 9 ("[T]his suit runs headfirst into the consular non-reviewability doctrine, warranting its dismissal under Rule 12(b)(6)."); id. at 13 (arguing that the "Plaintiff has still failed to state a claim because any delay here is not unreasonable as a matter of law"). It is unclear, however, whether the defendants raise their first argument under Rule 12(b)(1) or Rule 12(b)(6). See generally id. The Court need not resolve this ambiguity, as the Court ultimately concludes that dismissal is appropriate without the need to answer whether the defendants do, in fact, have a non-discretionary duty to act on the plaintiff's visa application.

[5] The defendant also argues that the Secretary of Homeland Security and the Department of Homeland Security should be dismissed as defendants because the Complaint does not allege that the Department of Homeland Security "was involved in the refusal of the [plaintiff's] Visa Application or is playing any ongoing role in [the] request for a visa." Def.'s Mot. at 4. Because the Court ultimately concludes that it must grant the defendants' motion and dismiss the action because any delay in adjudicating his visa application is not unreasonable, the Court need not address this argument.

Pour v. Rubio, No. 25-cv-573 (JEB), 2025 WL 2374559, at *3 (D.D.C. Aug. 14, 2025) (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)). Similarly, as to the plaintiff's APA claim, the plaintiff must "assert[] that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted). The plaintiff alleges that Section 555(b) of the APA creates such a duty. See Compl. ¶¶ 17–18.

The defendants argue that "[the p]laintiff cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application [because] it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g)." Defs.' Mot. at 5. The defendants rely primarily on Karimova v. Abate, 2024 WL 3517852 (D.C. Cir. July 24, 2024), an unpublished decision of the District of Columbia Circuit. See id. at *4–8. In that case, as here, the plaintiff argued that the defendants had a non-discretionary duty to act pursuant to Section 555(b) of the APA and sought an order compelling adjudication of a visa application that had been refused by a consular officer after an in-person interview, but was then placed into "administrative processing." Id. at *2.

In Karimova, the D.C. Circuit explained that:

> After a consular officer makes an official decision refusing to issue a visa because the applicant has not carried her burden of showing eligibility, the official may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change. As a result, the consular officer may choose to place an officially refused application in administrative processing . . . If the consular officer gets enough new information, . . . the officer can determine sua sponte that the administrative processing is "completed" and may then re-open and re-adjudicate the applicant's case. Unless and until that happens, though, the visa application remains officially refused.

Karimova, 2024 WL 3517852 at *2 (internal citation omitted). The D.C. Circuit concluded that, because the plaintiff "received the 'refused' decision that the law expressly authorizes as one of

the allowed actions on a visa application[,]" there was no basis to compel agency action, and even if there was, it 'at most could have entitled [the plaintiff] to the official refusal decision she already received,'" id. (first citing 22 C.F.R. § 42.81; then citing INA § 221(g)). The D.C. Circuit therefore determined that Section 555(b) of the APA does not impose a clear, non-discretionary duty on a "consular officer to re-adjudicate [an] already refused [visa] application." Id. at *3.[6]

This Court has previously declined to accept Karimova as binding precedent foreclosing the plaintiff's position that the defendants have a non-discretionary duty to adjudicate visa applications. See Liu v. Garland, No. 23-cv-1914 (RBW), 2024 WL 3924564, at *5 n.2 (D.D.C. Aug. 23, 2024) ("[The Karimova] decision is unpublished, and 'a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition[.]'" (quoting D.C. Cir. R. 36(e)(2)); see also Silva v. Rubio, No. 25-cv-2389 (RBW), 2026 WL 2295263 at *4 (D.D.C. Aug. 10, 2026) (same). Other courts in this district have similarly "avoid[ed] unnecessarily 'enter[ing] into the legal quagmire of differing views on the . . . issue' whether Karimova precludes a finding of a mandatory, non-discretionary duty." Oystacher v. Rubio, No. CV 25-3276 (BAH), 2026 WL 1998762, at *5 (D.D.C. July 10, 2026) (quoting Asim v. Blinken, No. 24-cv-638 (JEB), 2024 WL 3338778, at *3 (D.D.C. July 8, 2024)). The Court continues to take that approach here, and as it has done before, will assume favorably to the plaintiff's benefit that her complaint identifies a clear, non-discretionary duty and proceed to the defendants' other arguments. See Silva, 2026 WL 2295263, at *4; Liu 2024 WL 3924564, at *5; see also Motevali v. Blinken, No. 23-cv-2133 (RC), 2024 WL 3580937, at *5 (D.D.C. July 30,

---

[6] The plaintiff asserts that "the Court must accept [as true her] well-pleaded allegation [] that her "post-refusal administrative proceeding remains ongoing" and is therefore not "finally adjudicated." Pl.'s Opp'n at 3. At the motion to dismiss stage, however, the Court need only take her factual assertions as true, but cannot treat the plaintiff's legal conclusions in the same manner.

2024); Niyomwungere v. Blinken, 24-cv-1990 (APM), 2024 WL 5075827, at *3 (D.D.C. Dec. 11, 2024) (collecting cases).

### B. Whether the Consular Nonreviewability Doctrine Bars the Plaintiff's Claims

The defendants next argue that the consular nonreviewability doctrine bars the plaintiff's claim. Defs.' Mot. at 9. The consular nonreviewability doctrine "shields a consular official's decision to issue or withhold a visa from judicial review." Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021). The plaintiff argues that the consular nonreviewability doctrine does not apply because "[she] seeks only completion of adjudication—not a particular outcome[.]" Pl.'s Opp'n at 5.

Although "[s]everal judges in this district have concluded that a consular officer's decision to refuse a visa application for further administrative processing is not a final decision, and thus, the consular nonreviewability doctrine does not apply[,]" Datta, 2025 WL 752643, at *5, as previously indicated, Karimova "casts doubt on the accuracy of the reasoning in those decisions[,]" Sharifishourabi v. Blinken, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024). The Court will nonetheless again assume favorably to the plaintiff's benefit that the doctrine of consular nonreviewability does not bar her claim. The Court finds, as other courts in this District have found, that it need not determine the effect of Karimova on the consular non-reviewability doctrine because as concluded below, the plaintiff's claims fail on their merits. See Oystacher, 2026 WL 1998762, at *7 (collecting cases).

### C. Whether the Plaintiff Has Stated a Claim of Unreasonable Delay

The plaintiff's "claims under the APA and the Mandamus Act share the same standards for obtaining relief." Hajizadeh v. Blinken, No. 23-cv-1766, 2024 WL 3638336, at *4 (D.D.C. Aug 2, 2024). "The central question in evaluating 'a claim of unreasonable delay' is 'whether

the agency's delay is so egregious as to warrant mandamus.'" In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns Comm'n ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984). Courts in this Circuit analyze unreasonable delay using the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Motevali, 2024 WL 3580937, at *6 (quoting TRAC, 750 F.2d at 80). "While not 'ironclad,' the TRAC factors provide 'useful guidance in assessing claims of agency delay.'" Hajizadeh, 2024 WL 3638336, at *4 (quoting In re Core Commc'ns, Inc., 531 F.3d at 855). And, "[t]he first and fourth factors are [the] most important in the visa context." Id. (quoting Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)). Of significant importance, courts in this District have consistently noted that "application of the TRAC factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay." Bega v. Jaddou, No. 22-cv-2171 (BAH), 2022 WL 17403123, at *4 n.2 (D.D.C. Dec. 2, 2022), aff'd sub nom. Da Costa v. Immig. Inv. Program Off., 80 F.4th 330 (D.C. Cir. 2023). Applying the TRAC factors here, the Court concludes that the plaintiff has failed to state a claim on which the relief requested can be granted.

**1. TRAC Factors One & Two**

"The first and most important factor [for the Court to consider] is that 'the time agencies take to make decisions must be governed by a rule of reason.'" In re Core Commc'ns, Inc., 531

F.3d at 855 (quoting TRAC, 750 F.2d at 80). This factor is most commonly analyzed in tandem with the second factor, which provides that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[.]" Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *7 (D.D.C. Oct. 23, 2023); see Hajizadeh, 2024 WL 3638336, at *4 ("The first two factors—requiring agencies to follow 'a rule of reason' related to their timeliness, and the influence of a congressionally imposed timeline—are typically considered together." (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020)).

"District courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable." Ahmadi v. Scharpf, No. 23-cv-953 (DLF), 2024 WL 551542, at *5 (D.D.C. Feb. 12, 2024) (quoting Rahman v. Blinken, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023)). "Conversely, courts in this jurisdiction have typically concluded that delays of two or three years are not unreasonable." Motevali, 2024 WL 3580937, at *6. "And indeed, recently, the [District of Columbia] Circuit found that a delay of four-and-one-half years was not unreasonable." Id. (citing Da Costa, 80 F.4th at 342).[7]

Here, the plaintiff claims that "[her] application has remained pending for over 484 days" and "[the d]efendants have provided no explanation for the delay[.]" Pl.'s Opp'n at 2. To determine the length of delay in immigration processing cases, courts in this District "focus on the delay up to the issuance of the [court's] opinion." Brzezinski v. U.S. Dep't of Homeland Sec., No. 21-cv-376 (RC), 2021 WL 4191958, at *1, *4 n.3 (D.D.C. Sept. 15, 2021). Here, the

[7] While Ahmadi, Rahman, and Motevali discuss different types of visa applications than the H-1B petition at issue in this case, the Court has applied the general principle that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable" to unreasonable-delay claims involving H-1B visa applications as well. Sharma v. Rubio, 2026 WL 1998508, at *6 (D.D.C. July 10, 2026) (finding one-year delay in the processing of a H1-B visa application "well short of . . . what courts have considered . . . unreasonable").

Complaint indicates that the plaintiff appeared for his interview on December 10, 2024, Compl. ¶ 13, slightly less than two years before the issuance of this Memorandum Opinion. The plaintiff argues that "[a]n unexplained 15+ months delay[—now approximately 23 months—] that disrupts employment and family life" is unreasonable. Pl.'s Opp'n at 7. However, the statute that the plaintiff cites—5 U.S.C. § 706(1)—does not support that statement and, more importantly, does not rebut the authority cited above. Although the Court is sympathetic to the plaintiff's concerns regarding this delay, considering "the overwhelming trend within this [C]ircuit[,]" the Court must conclude that the defendants' "delay of approximately [23] months [as of the date of this Memorandum Opinion] is not unreasonable." Motevali, 2024 WL 3580937, at *7. Thus, the first two factors, considered together, favor the defendants.

**2. TRAC Factor Four**

"The fourth TRAC factor, which is 'the effect of expediting delayed action on agency activities of a higher or competing priority,' is particularly important in the visa context." See Hajizadeh, 2024 WL 3638336, at *5 (quoting Da Costa, 80 F.4th at 342). "Courts are generally hesitant to direct agencies as to which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space and produce[] no net gain.'" Motevali, 2024 WL 3580937, at *8 (alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "In fact, the [District of Columbia] Circuit 'has refused to grant relief, even [when] all the other facts considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'" Id. (quoting Milligan, 502 F. Supp. 3d at 319)).

The plaintiff argues that she does not seek "preferential treatment[,]" but "only adjudication of her own delayed application." Pl.'s Opp'n at 7. But, "[c]ompelling agency action on [her] visa application would 'impose offsetting burdens on equally worthy' applicants by effectively putting [her] 'at the head of the queue,' thereby 'mov[ing] all others back one space and produc[ing] no net gain[.]'" Motevali, 2024 WL 3580937, at *8 (fourth and fifth alterations in original) (quoting In re Barr Lab'ys, Inc., 930 F.2d at 73, 75). In other words, "granting [the p]laintiff [her] requested relief would require the State Department to 'reorder[] [its] priorities' in a case where the 'agency is in a unique—and authoritative—position to . . . allocate its resources in the optimal way.'" Id. (quoting In re Barr Lab'ys, 930 F.2d at 76). "This, the [District of Columbia] Circuit has admonished, is something that courts should not do." Id. Accordingly, for the foregoing reasons, the Court finds that the fourth TRAC factor weighs in the defendants' favor.

**3. TRAC Factors Three & Five**

"The third and fifth factors overlap[,]" and require the Court to consider "the impact on human health and welfare and economic harm, [as well as] the nature and extent of the interests prejudiced by the delay." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Here, the plaintiff has alleged that the delay has caused her "severe emotional and physical hardship" and that she has "experienced ongoing stress and anxiety, including many sleepless nights." Compl. ¶ 3. The plaintiff also alleges that, because of the delay, "she has had to move out from her family home and live alone to accommodate the demands of remote work, which is limited by inadequate space and poor ergonomic conditions." Id. Consequently, the plaintiff claims that she "has developed patellofemoral arthritis due to prolonged sitting and unsuitable furniture, further impacting her physical health and quality of life." Id. But "without more facts

suggesting otherwise, these harms[, standing alone,] do not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendants'] advantage on the more important factors." Hajizadeh, 2024 WL 3638336, at *6; see id. (finding that allegations of "severe emotional distress" and significant financial costs "spent on visa-related expenses" did "not threaten [the p]laintiff['s] physical health and wellbeing in a manner compelling enough to overcome [the defendant's] advantage on the more important factors"); Da Costa, 80 F.4th at 345 (concluding that the third and fifth TRAC factors did not favor the plaintiffs where "they d[id] not, for example, allege that they [were] unable to access electricity, water, food, or shelter"). These factors, therefore, weight in favor of the defendant.

### 4. TRAC Factor Six

"The final TRAC factor considers whether the agency's bad faith caused the delay." Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155, 164 (D.D.C. 2022). Here, the plaintiff's Complaint "does not allege that a decision on [his] application was delayed intentionally or was the result of any impropriety." Id.; see generally Compl. "Therefore, 'the good faith of the agency in addressing the delay weighs against [] equitable relief [being granted to the plaintiff].'" Sawahreh, 630 F. Supp. 3d at 164 (quoting Milligan, 502 F. Supp. 3d at 319).

## IV. CONCLUSION

For all of the foregoing reasons, the Court concludes that it must grant the defendants' motion to dismiss.

**SO ORDERED** this 5th day of November, 2026.[8]

REGGIE B. WALTON
United States District Judge

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.